1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Ali Zugair Aljibory,

           Petitioner,

vs.

Charles L. Ryan, et al.,

           Respondents.

)
)
)
)
)
)
)
)
)
)
)
)

No. CV-13-00675-PHX-SRB (SPL)

**REPORT AND RECOMMENDATION**

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

      Petitioner Ali Aljibory, who is confined in the Arizona State Prison Complex in Phoenix, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1)**.**

## BACKGROUND

      On April 27, 2011, Petitioner was indicted by a grand jury in the Maricopa County Superior Court ("Superior Court"), Case No. CR 2011-006062-001, charging him with unlawful discharge of a firearm in violation of A.R.S. § 13–3107 (Count I), disorderly conduct in violation of A.R.S. § 13–2904 (Count II), and misconduct involving weapons (as a prohibited possessor) in violation of A.R.S. § 13–3102 (Count III). (Doc. 9-1, Exh. A.) Following a jury trial, on October 12, 2011, Petitioner was found guilty on all three counts. (Doc. 9-1, Exh. B.) On November 16, 2011, the Superior Court sentenced Petitioner to concurrent terms of 2.25 years' imprisonment for Counts I and II, and 4.5

years' imprisonment for Count III. (Doc. 9-1, Exh. C.)

Petitioner timely filed a notice of appeal (Doc. 9-1, Exh. E), and on May 18, 2012, appellate counsel filed an opening brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that he had searched the record on appeal and found no question of law that was not frivolous (Doc. 9-1, Exh. F). Appellate counsel further requested that the Arizona Court of Appeals search the record for fundamental error (Doc. 9-1, Exh. F), and that Petitioner be permitted to file a supplemental brief *in propria persona* (Doc. 9-1, Exh. G). The Arizona Court of Appeals granted counsel's requests (Doc. 9-1, Exh. H), and Petitioner's supplemental brief followed (Doc. 9-1, Exh. I). Therein, Petitioner raised three issues:

I.  Lack of Interpreter

During the trial process, the judge denied me an interpreter.

II.  Denial of Own Counsel

During the trial process, the judge denied me the right to hire private counsel.

III.  Denial of Evidence

I told the courts that the gun had fallen and hit the ground, causing it to discharge. Also that it broke because of the fall. So there[] was no way I could of discharge[d] it. The witness lived with me and used drugs and had run-ins with the law. My lawyer or the courts didn't discredit them.

(Doc. 9-1, Exh. I.) In a memorandum decision filed on September 11, 2012, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Doc. 9-1, Exh, J); *See also State v. Aljibory*, No. 1 CA-CR 11-0810, 2012 WL 3939352 (Ariz. Ct. App. Sep. 11, 2012). Petitioner filed a Petition for Review in the Arizona Supreme Court (Doc. 9-1, Exh. K), which was summarily denied on February 15, 2013 (Doc. 9-1, Exh. L). Mandate was issued on March 18, 2013. (Doc. 9-1, Exh. M.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on April 1, 2013. (Doc. 1.) Respondents filed a Limited Answer (Doc. 9), to which no reply was filed.

2

**DISCUSSION**

In his Petition for Writ of Habeas Corpus, Petitioner raises two grounds for relief. In their answer, Respondents argue that Petitioner's claims, without more, are not cognizable on federal habeas review. Alternatively, Respondents argue that Petitioner failed to exhaust his claims, and therefore they are procedurally barred from review. For the reasons that follow, the Court concludes that Petitioner's claims are procedurally barred from review and further fail on their merits. Therefore, the Court will recommend that the petition be denied.

**I.   Applicable Law**

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[1] 28 U.S.C. § 2244.

**A.   Standard for Habeas Relief**

Under AEDPA, a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

It follows that, "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784 (2011). In applying this standard, the federal habeas court reviews "the last reasoned state court decision addressing the

---

[1]   The AEDPA applies only to those cases that were filed after its effective date, April 24, 1996. *See Lindh v.* Murphy, 521 U.S. 320, 326-27 (1997).

claim in question." *Henry v. Ryan*, 720 F.3d 1073, 1078 (9th Cir. 2013); *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005). A state court decision adjudicated a claim "on the merits" where it resolved the substance of the claim rather than relied on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). *But see Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted."). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief" under 28 U.S.C. § 2254(d). *Harrington*, 131 S.Ct. at 784.

Under 28 U.S.C. § 2254(d)(1), "clearly established Federal law" refers to holdings of the Supreme Court in effect at the time the state court rendered its decision. *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) ("A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of this Court."). A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but applies that rule to the facts of a particular case in an objectively unreasonable manner. *Williams*, 529 U.S. at 407-408; *Lockyer v*, 538 U.S. at 75. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct.

4

at 786-87.

Under 28 U.S.C. § 2254(d)(2), "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). *See Maxwell v. Roe*, 628 F.3d 486, 500 (9th Cir. 2010), *cert. denied,* __ U.S. __, 132 S.Ct. 611 (2012); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). "[W]here the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Milke v. Ryan*, 711 F.3d 998, 1008 (9th Cir. 2013) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

With regard to either exception under § 2254(d), "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, ___ U.S. ___, 131 S.Ct. 13, 16 (2010) (original emphasis) (quoting 28 U.S.C. § 2254(a)). In other words, federal habeas corpus relief is not available for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Federal courts accept a state court's interpretation of state law "and alleged errors in the application of state law are not cognizable in federal habeas corpus." *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). A habeas petitioner also cannot "transform a state law issue into a federal one by merely asserting a violation of due process." *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) (quoting *Langford*, 110 F.3d at 1389). "[T]he Supreme Court has long settled that the Fourteenth Amendment does not assure immunity from judicial error or uniformity of judicial decisions." *Little v. Crawford*, 449 F.3d 1075, 1082 (9th Cir. 2006).

**B.      Exhaustion and Procedural Bar**

A federal court may not grant habeas relief under AEDPA if the petitioner has failed to exhaust his claim in state court. 28 U.S.C. § 2254(b)(1) & (c); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999). "[A] petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

First, a petitioner must present his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan*, 526 U.S. at 848. A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. "[C]laims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them" either on direct appeal or through appropriate post-conviction relief. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Second, if a petitioner fails to invoke the required procedure, exhaustion is not satisfied even if the petitioner raises the claim through an alternative procedure. *See e.g., Roettgen,* 33 F.3d at 38 (holding that petitioner failed to exhaust state remedies when he presented claim in the state habeas petition instead of Arizona Rule 32 post-conviction proceeding).

In addition to presenting a claim in the proper forum and vehicle, to satisfy the exhaustion requirement, "a petitioner must 'present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan*, 711 F.3d 1026, 1041 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582-83 (9th Cir. 2009). *See also Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1472-73 (9th Cir. 1994), *overruled on other grounds by Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc). In presenting the factual basis of a claim, a petitioner need not present "every piece of evidence

supporting his federal claims," but must "provide the state court with the operative facts, that is, all of the facts necessary to give application to the constitutional principle upon which [the petitioner] relies." *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (internal quotation marks and citation omitted); *Baldwin v. Reese,* 541 U.S. 27, 28 (2004). In presenting the legal basis of a claim, a petitioner must alert the state court to the fact that he is asserting a federal claim and cite to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001); *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000) ("Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law") *amended on other grounds*, 247 F.3d 904 (9th Cir. 2001); *Shumway v. Payne*, 223 F.3d 982, 987 (9th Cir. 2000) (finding "a general appeal to a constitutional guarantee," such as a naked reference to "due process," or to a "constitutional error" or a "fair trial" is insufficient); *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (finding a mere reference to the "Constitution of the United States" does not preserve a federal claim).

If a petitioner fails to fairly and fully present his federal claim in state court, and returning to state court would be "futile" because the state courts' procedural rules would bar consideration of the claim, the claim is procedurally defaulted and is barred from federal review. *Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). *See State v. Mata*, 916 P.2d 1035, 1048-53 (Ariz. 1996); Ariz. R. Crim. P. 32.2(a) & (b); 32.1(a)(3) (post-conviction review is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time-barred. *Beaty*, 303 F.3d at 987; *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)). This type of procedural default is known as "technical" exhaustion because although the claim was not actually exhausted in state

court, the petitioner no longer has an available state remedy. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

A claim may also be procedurally defaulted and barred from federal review if it was actually raised in state court, but found by that court to be defaulted on an adequate and independent state procedural ground, such as waiver or preclusion. *Beard v. Kindler*, 558 U.S. 53 (2009); *Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991). Arizona courts have been consistent in their application of procedural default rules. *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (holding that Ariz. R. Crim. P. 32.2(a) is an adequate and independent procedural bar); *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) ("Arizona Rule of Criminal Procedure 32.2(a)(3) is independent of federal law and has been regularly and consistently applied, so it is adequate to bar federal review of a claim."); *Cook v. Schriro*, 538 F.3d 1000, 1026 (9th Cir. 2008).

A procedurally defaulted claim may not be barred from federal review "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones*, 691 F.3d at 1101 (quoting *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546). *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to *pro se* petitioners as well as to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook*, 538 F.3d at 1027 (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d

1098, 1105 n.6 (9th Cir. 1999); *Cook*, 538 F.3d at 1028 fn. 13.

Lastly, "[t]o qualify for the 'fundamental miscarriage of justice' exception to the procedural default rule" a petitioner "must show that a constitutional violation has 'probably resulted' in the conviction when he was 'actually innocent' of the offense." *Cook*, 538 F.3d at 1028 (quoting *Murray*, 477 U.S. at 496). *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (petitioner must make a credible showing of "actual innocence" by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324.

## II.  Petitioner's Claims

### A.  Ground One

In Ground One, Petitioner essentially argues that he was deprived of due process when the Superior Court denied his request for an Arabic translator. As a result, he received constitutionally excessive sentences.

While Petitioner presented the facts of this claim on direct appeal, it was "not sufficient to give a 'fair opportunity' to the [state court] to decide a federal claim." *Cook*, 538 F.3d at 1029 (citing *Peterson v. Lampert*, 319 F.3d 1153, 1159 (en banc) (9th Cir. 2003). "'[M]ere similarity' between [the] state claim presented in state court and the federal claim made in th[is] habeas petition does not suffice to avoid procedural default." *Peterson*, 319 F.3d at 1159-60 (citing *Hiivala,* 195 F.3d at 1106 (9th Cir. 1999)). A return to state court to present this claim would be futile under Arizona's procedural rules. The time has passed to seek post-conviction relief in state court under Rule 32.4(a) of the Arizona Rules of Criminal Procedure, and Petitioner has not shown that any of the exceptions under Rule 32.1 apply to him. *See* Ariz. R. Crim. P. 32.2(b). Therefore, this claim is technically exhausted and procedurally defaulted. Petitioner has not filed a reply

and does not offer any reason to excuse the default. Further, although Petitioner maintains that his convictions are unfair, he does not demonstrate that failure to review the merits of his claims would result in a fundamental miscarriage of justice.

Alternatively, Petitioner's claim fails on the merits. *See* 28 U.S.C. § 2254(b)(2); *Henry*, 720 F.3d at 1084 (court may deny the a habeas claim on the merits, even if petitioner failed to exhaust state remedies); *Runningeagle v. Ryan*, 686 F.3d 758, 777 fn. 10 (9th Cir. 2012); *Simmons v. Blodgett*, 110 F.3d 39, 41 (9th Cir. 1997) (exhaustion is not jurisdictional). Petitioner has not demonstrated that the decision of the state court was contrary to clearly established federal law, was based on an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts considering the evidence presented in state court. The memorandum decision issued by the Arizona Court of Appeals on direct appeal, the last relevant reasoned state court decision, addressed Petitioner's claim as follows:

> ¶ 16 Appellant also argues, "During the Trial process, the judge denied me an interpreter."

> ¶ 17 Appellant's argument stems from a request he made on the third and final day of trial. Defense counsel stated that Appellant had, "about a moment ago ... brought to my attention he feels more comfortable with an interpreter, should he testify." Counsel also noted that, with the exception of two earlier "probation matters," Appellant had not utilized an interpreter in his prior court appearances, including in cases from 2006 and 2008. The court asked Appellant, who speaks both Arabic and English, why he had not made the request earlier, and Appellant claimed that he had not asked the court because he had broached the subject with both the prosecutor and his attorney several weeks prior.[FN7] He admitted, however, that he had no trouble understanding previous proceedings or anything the court said to him, but then further stated that "some conversation I can't understand because [English] is my second dialect."

>> FN7. Appellant also claimed he had broached the subject with private counsel, Mr. Anderson, and the court noted "that was not listed in [Mr. Anderson's] motion." The prosecutor denied that he had been involved in any such conversation, stating that he had "never talked to [Appellant]," and that "Mr. Tosto has always been more than frank with me, and I have no doubt that had [Appellant] raised this before, I would have known about it from Mr. Tosto."

¶ 18 The court then took a recess. When the court returned, it stated that it had reviewed the superior court's records involving numerous court appearances by Appellant, and noted that the records failed to "indicate any concern or request for an interpreter," including in 2006 when Appellant had entered a plea agreement with the State. The court also found Appellant's request for an interpreter untimely, and after determining "in an abundance of caution" that no Arabic interpreter was still available that day, denied Appellant's request. The court clarified its ruling by stating that it was "not making its decision based on the availability of the [A]rabic interpreter," but on its conclusion that Appellant had failed to raise "an actual issue with needing an interpreter, considering the past record." Appellant ultimately opted not to testify.[FN8] We find no error, much less fundamental, reversible error in the court's decision not to delay the final day of trial to procure an interpreter for Appellant.

> FN8.  In announcing his decision not to testify, Appellant nonetheless chose to inform the court that "sometimes I can speak very well."

¶ 19 "It is axiomatic that an indigent defendant who is unable to speak and understand the English language should be afforded the right to have the trial proceedings translated into his native language in order to participate effectively in his own defense, provided he makes a timely request for such assistance." *State v. Natividad*, 111 Ariz. 191, 194, 526 P.2d 730, 733 (1974). A failure to provide a necessary interpreter would effectively deny a defendant his due process rights to a fair trial and constitute fundamental error. *See id.* In general, we will adhere to the trial court's discretion whether an interpreter is required, because that court "is in the best position to determine whether a defendant possesses the requisite degree of fluency in the English language." *Id.*

¶ 20 In this case, Appellant points to nothing in the record to suggest that he was unable to sufficiently comprehend the evidence and procedure. Also, neither Appellant nor his counsel ever suggested that they were unable to communicate with each other throughout the duration of the trial. In fact, the record, including Appellant's conversations with the court throughout trial, supports the court's conclusion that Appellant failed to raise "an actual issue with needing an interpreter," and we find no abuse of discretion, much less fundamental error, in the court's decision not to appoint an interpreter. *See id.* There is no evidence in the record suggesting that the court's denial of Appellant's last-minute request for an interpreter interfered with Appellant's constitutional rights or in any way caused him prejudice.

*Aljibory*, 2012 WL 3939352 at *4.

While the Supreme Court of the United States has not specially addressed whether

11

there is a constitutional right to a court-appointed interpreter, the Ninth Circuit Court of Appeals has found "that a constitutional right to an interpreter exists in certain situations." *United States v. Si*, 333 F.3d 1041, 1042-1043, 1043 n. 3 (9th Cir. 2003) (citing *United States v. Lim*, 794 F.2d 469, 470 (9th Cir. 1986) (holding defendant's inability to communicate in English may interfere with his Sixth Amendment right to confrontation or Fifth Amendment due process right or his right to testify on his own behalf); *United States v. Mayans*, 17 F.3d 1174, 1179–81 (9th Cir. 1994) (holding that a defendant's Fifth Amendment rights were violated when an interpreter was withdrawn by the court); *United States v. Shin*, 953 F.2d 559, 561 (9th Cir. 1992) (finding that "[a]s a constitutional matter, the appointment of interpreters is within the district court's discretion.")).  In interpreting this right, the Ninth Circuit has looked to whether there are "specific instances of prejudice resulting from the translation procedure employed" by the court such that the "defendant's ability to understand the proceedings [was] *actually* compromised." *United States v. Lee*, 967 F.2d 594, 1992 WL 144716 (9th Cir. Jun. 25, 1992) (unpublished) (emphasis in original). *See also United States v. Tapia*, 631 F.2d 1207, 1210 (5th Cir. 1980) ("The basic inquiry on whether or not the failure to provide an interpreter was error… must be whether… [the defendant was] inhibited from such comprehension of the proceedings or the testimony given against him in English to such an extent as to have made the trial fundamentally unfair"); *Valladares v. United States*, 871 F.2d 1564, 1566 (9th Cir. 1989) ("The ultimate question is whether any inadequacy in the interpretation "made the trial fundamentally unfair.").

As found by the state court and reflected in the record (Doc. 9-1, Exh. J; Doc. 9-2 at 132-140, Exh. P), following Petitioner's request, the Superior Court reviewed the available information concerning Petitioner's conduct during the trial and in former proceedings. It found Petitioner had communicated with the Superior Court throughout trial without an interpreter. In his prior court appearances, both in that case and in previous criminal proceedings, Petitioner had proceeded without the use of an interpreter. It was not until the final day of trial that Petitioner requested an interpreter. Because

Petitioner had demonstrated an ability to sufficiently comprehend the evidence and procedure during those proceedings, the Arizona Court of Appeals concluded that the Superior Court's denial of the request for an interpreter did not result in prejudice, nor was an abuse of discretion.

This conclusion was not contrary to, or an unreasonable application of, clearly established federal law. There was no indication that Petitioner was unable to comprehend the proceedings or instructions of the court. Petitioner did not testify at trial, and there was no indication that Petitioner was unable to communicate with the court or counsel. Thus, there were no circumstances that presented a basis for a finding of a violation of Petitioner's Fifth, Sixth, or Fourteenth Amendment rights. A fairminded jurist could reasonably find that Petitioner's apparent ability to proceed with without an interpreter in prior proceedings and throughout trial demonstrated an ability to communicate effectively in the English language. As long as Petitioner's ability to understand the proceedings and communicate was unimpaired, the appropriate use of an interpreter was a matter within the Superior Court's discretion. Therefore, the Court will recommend that Ground One be denied.

### B.      Ground Two

In Ground Two, Petitioner argues that he received constitutionally ineffective assistance of trial counsel. He implicitly argues that had he been able to effectively communicate with defense counsel and understood the possible consequences of his convictions, he would have entered into a plea agreement rather than proceeded to trial.

Petitioner did not properly exhaust this claim in state court. Petitioner did not present this claim to state court in post-conviction relief proceedings. While Petitioner appears to have generally alleged ineffective assistance of counsel on direct appeal, the Arizona Court of Appeals explicitly declined to consider the claim. *Aljibory*, 2012 WL 3939352 at *4. "As a general rule, ineffective assistance of counsel claims should be raised in post-conviction relief proceedings pursuant to rule 32, Arizona Rules of Criminal Procedure." *Lambright v. Stewart*, 241 F.3d 1201, 1204 (9th Cir. 2001).

Because a return to state court would be futile, Petitioner's ineffective assistance of counsel claim is technically exhausted and procedurally defaulted. Petitioner has not filed a reply, nor has he offered any reason to excuse the default or demonstrated that failure to review the merits of his claims would result in a fundamental miscarriage of justice.[2]

Alternatively, Petitioner's claim fails on the merits. To prevail on an ineffective assistance of counsel claim under § 2254(d)(1), a petitioner must show that "the state-court decision unreasonably applied the more general standard for ineffective-assistance-of counsel claims established by" *Strickland v. Washington*, 466 U.S. 668 (1984). *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013). Under *Strickland*, a petitioner must show: (1) deficient performance, in that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 687-88.  A defendant has the right to effective assistance of counsel when considering whether to accept or reject a plea offer. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (holding that the same two-part standard announced in *Strickland* is applicable to ineffective-assistance claims arising out of the plea process."). Where a petitioner alleges that counsel's ineffective performance led to the rejection of a plea offer, he "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v.*

---

[2]     In states like Arizona, which require that ineffective assistance of trial counsel claims be raised in an initial-review collateral proceeding, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, __U.S.__ 132 S.Ct. 1309, 1315 (2012).  *See also Dickens v. Ryan*, __F.3d__, 2014 WL 241871 (9th Cir. Jan. 24, 2014). In the instant case however, Petitioner did not seek post-conviction relief, nor does he argue that his claim was not properly presented in state court in an initial-review collateral proceeding due to an attorney's error. *See Martinez*, 132 S.Ct. at 1313. Thus, *Martinez* is not applicable to case at bar.

14

*Cooper*, 132 S.Ct. 1376, 1385 (2012).

Petitioner has not met his burden to show that there was no reasonable basis for the state court to deny relief based on this claim. *See Harrington*, 131 S.Ct. at 784. In his habeas petition, Petitioner avers that he is "worried about how to communicate with [his] feeling and thoughts about [his] conviction. [He] didn't fully understand the consequences of taking [his] case to trial. Now that [he has] been convicted [he] feel[s] that [he] would have made a more appropriate decision concerning [the] outcome if [he] would have had proper counseling with an interpreter." (Doc. 1 at 7.) Undoubtedly, Petitioner would prefer a lesser sentence than the one he received, and he may have achieved that had he accepted a plea offer instead of going to trial. Nonetheless, accepting Petitioner's contentions as true, nothing suggests that counsel's performance was deficient or that had Petitioner received the benefit of an interpreter, the outcome would have been different.

It was not until the final day of trial that Petitioner first voiced a request to the court for an interpreter, which initially, was merely preemptive in the event he would decide to testify. (Doc. 9-2 at 132, Exh. P.) Only then, did Petitioner first allege that several weeks earlier, he had asked defense counsel to obtain interpreter services. However, as recounted by the Superior Court, Petitioner, nor his defense counsel, had previously expressed any concern to the court regarding the need for an interpreter. Petitioner also never submitted to the court that he required the assistance of an interpreter or was unable to communicate with defense counsel during his 2006 and 2008 criminal proceedings. (Doc. 9-2 at 136-139, Exh. P.) The record does not compel that counsel unreasonably failed to secure the assistance of an interpreter for Petitioner.

The record also fails to persuade that there was a reasonable probability that had the language barrier been removed, Petitioner would have accepted a plea offer. Petitioner has not identified what information was inadequately communicated to him and could have swayed his decision. He does not specify what plea offer was made which he would have accepted, nor does he contend that defense counsel failed to adequately

communicate the terms of a plea offer to him in a manner he could understand. Petitioner does offer any set of facts that show that he was unable to communicate with defense counsel such that it precluded him from understanding the benefits of a plea agreement. In fact, the record shows Petitioner entered into a plea agreement in a prior criminal matter without the aid of an interpreter. Instead, the record illustrates that Petitioner was resolute in proceeding to trial; in the petition he alleges that the gun discharge was accidental, not intentional, so he "went to trial." (Doc. 1 at 6.) Having lost, he "was punished for doing the right thing and going to trial." (*Id.*)

Based on these facts, the Court cannot conclude that counsel's performance fell below an objective standard of reasonableness or that different actions by trial counsel would likely have resulted in a different outcome. Therefore, Petitioner does not assert a viable claim for ineffective assistance of counsel and the Court will recommend that Ground Two be denied.

## CONCLUSION

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011)*; Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010). Based on the above analysis, the Court finds that Petitioner's claims are procedurally barred from review and further fail on their merits. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of

the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 21st day of February, 2014.

Honorable Steven P. Logan
United States Magistrate Judge

17